IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIONELL KLINE, ) | |
| ) | |
| Plaintiff, ) | Case No.: 19-cv-05291 |
| ) | |
| v. ) | Judge John J. Tharp Jr. |
| ) | |
| UNITED AIRLINES, INC., ) | Magistrate Judge Maria Valdez |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**DEFENDANT UNITED AIRLINES, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS AND FIRST REQUEST FOR PRODUCTION OF INTERROGATORIES AND FOR SANCTIONS**

Defendant United Airlines, Inc. ("Defendant" or "United"), by and through its undersigned attorneys, respectfully submits this Response to Plaintiff Lionell Kline's ("Plaintiff" or "Kline") Motion to Compel Production of Documents Responsive to Plaintiff's Second Request for Production of Documents and First Request for Production of Interrogatories and for Sanctions (Dkt. No. 99), and in support thereof states as follows:

**INTRODUCTION**

Plaintiff's Motion is based on nothing but conclusory arguments that United is attempting to "abuse and frustrate the MIDP system" and has not engaged in discovery in good faith. A fulsome review of the parties' discovery efforts and communications to date, which is described in detail herein, reveals that United has been exceedingly cooperative with and accommodating to Plaintiff since the parties first exchanged their MIDP Responses 13 months ago. United has produced (and reproduced) nearly 1,700 pages of documents to Plaintiff between its initial MIDP production and supplemental productions. United also has engaged in discovery in good faith,

1

provided Plaintiff the documents he has requested (subject to United's reasonable and proper objections), and asked Plaintiff for clarification at times when he indicated he was dissatisfied with United's discovery responses. Yet despite United's efforts, Plaintiff misrepresents the parties' November 10, 2020 discovery conference and United's conduct, which has been nothing but compliant and obliging. This is further made apparent by the fact that Plaintiff's Motion does not identify any specific discovery requests to which he believes United has failed to respond, or responses that he believes are incomplete. The fact is that United has properly responded to Plaintiff's discovery requests, and there is simply nothing for the Court to compel, and by no means are there any grounds for sanctions. Accordingly, United respectfully requests that the Court deny Plaintiff's Motion at this time.

## RELEVANT BACKGROUND REGARDING DISCOVERY

Pursuant to the Court's October 29, 2019 Order (Dkt. No. 16), on November 12, 2019, United served its Mandatory Initial Discovery Pilot ("MIDP") Responses on Plaintiff. (Ex. A.) In its MIDP Responses, United stated, in accordance with Paragraph B.3 of the Amended Standing Order Regarding Mandatory Initial Discovery Pilot Project (the "MIDP Standing Order"): "[c]opies of non-confidential, non-privileged documents that may be relevant to Plaintiff's claims and/or United's defenses are available for inspection at the offices of undersigned counsel." (*Id*. at 5.) Plaintiff's counsel did not request to inspect or receive copies of the documents identified in United's MIDP Responses.

On November 28, 2019, Plaintiff's then-counsel sent Plaintiff's MIDP Responses to United. (Ex. B.) In those responses, Plaintiff stated the following with respect to the disclosure of documents:

1. Hard-Copy Documents. Plaintiff request[] hard copy documents to be produced in hard copy format, with an index detailing the documents produced, for the years requested and covered by the allegations contained in the complaint, along with a CD.

2. ESI. Plaintiff request[] ESI to be produced in hard copy format, with an index detailing the documents produced, for the years requested and covered by the allegations contained in the complaint, along with a CD.

(*Id.* at Section C.) Yet, the MIDP Standing Order provided that (1) hard-copy documents "must be produced as they are kept in the usual course of business" and (2) when the existence of ESI was disclosed or discovered, the parties must "promptly confer and attempt to agree on matters relating to its disclosure and production." (MIDP Standing Order at Section C.)

On December 5, 2019, counsel for United received an email from Plaintiff stating that on December 1, 2019, he had fired his then-counsel. (Ex. C.) On December 11, 2019, Plaintiff's counsel filed a motion to withdraw as counsel (Dkt. No. 35), which the Court granted on December 19, 2019 while directing the parties to exchange settlement proposals and "strongly encourage[ing] the parties to confer regarding potential settlement of this dispute." (Dkt. No. 41.)

On February 4, 2020, Magistrate Judge Valdez entered an order directing the parties to "exchange any outstanding initial disclosures forthwith." (Dkt. No. 47.) Accordingly, on February 11, 2020, United produced 1,365 pages of documents as its initial MIDP production. (Ex. F.) United withheld certain documents from its initial MIDP production due to their confidential nature, and on February 20, counsel for United sent Plaintiff a proposed Confidentiality Order, asking if he would agree to its entry. (Ex. I.) Counsel for United followed up with Plaintiff regarding the proposed Confidentiality Order on February 24 and February 25 (Ex. K), but Plaintiff did not respond.

On January 24, January 29, and February 12, 2020, Plaintiff sent United document requests in the bodies of emails. (Exs. D, E and G.) In response, United produced additional

3

documents to Kline on February 20, 2020, and on February 24, 2020 sent Kline formal responses and objections to his requests. (Exs. I, J and K.)

On February 25, 2020, in response to an email from Kline stating that he was "still awaiting an answer to [his] February 12, 2020 request for documents," United's counsel informed him that United had produced relevant and responsive documents it was able to locate after a reasonable search, and referred Kline to its February 11 and February 20 document productions. (Ex. K.) United's counsel also referred Kline to the responses and objections that had been sent to him the day before. (*Id.*)

On February 21, 2020, the Court appointed Donald J. Mock as settlement counsel for Plaintiff. (Dkt. No. 51.) On May 11, 2020, Mr. Mock asked counsel for United to send him a copy of Plaintiff's employee file, which counsel for United provided the same day, indicating that the documents had been previously produced to Plaintiff. (Ex. L.) On June 26, 2020, Mr. Mock requested copies of all discovery exchanged thus far, which counsel for United provided to him the same day. (Ex. M.)

The Court entered an order on May 29, 2020 requiring Plaintiff to submit a revised settlement demand to United by June 29, 2020, and requiring United to respond by July 27, 2020. (Dkt. No. 66.) Subsequently, on August 28, 2020. Mr. Mock sent counsel for United a "reply" to United's July 27 settlement offer letter. (*See* Dkt. No. 73.)

After the parties were unsuccessful in reaching a settlement, they continued written discovery. United served its first set of written discovery on Plaintiff on September 23, 2020. (Exs. N and O.) On October 13, 2020, Plaintiff served his first set of "Interrogatories" to United, although they were stylized as "Production Requests," and virtually every request solely sought

4

the production of documents. (Ex. P.)[1]

On November 7, 2020, before the due date for United's responses to Plaintiff's October 13, 2020 discovery requests, Plaintiff emailed counsel for United requesting a discovery conference, which the parties held on November 10, 2020. (Ex. Q.) The day before the discovery conference, Plaintiff sent counsel for United his "response" to United's objections to his January 24, January 29, and February 12 requests for production of documents. (Ex. R.) During the November 10 discovery conference, the parties discussed Plaintiff's concerns with United's objections to his production requests, and United's counsel provided further explanations of the basis for its objections. Counsel for United also explained that United had already produced much of what Plaintiff was seeking. After Plaintiff stated that he did not have copies of United's productions, counsel for United sent Plaintiff the documents that had already been produced to him in February and to his settlement counsel in June. (*See* Ex. S.) United's counsel also informed Plaintiff that, based on the clarification he provided during the November 10 conference with respect to certain of his requests, they would search for and provide additional responsive documents and information, which in fact were provided to Plaintiff on November 12 and December 4, 2020. (Exs. T, W and X.)

On November 12, 2020, United served its responses and objections to Plaintiff's "Interrogatories" and produced over 200 additional pages of responsive documents. (Exs. T and U.) Included in the production were confidential documents that previously had been withheld,

---

[1] Out of Plaintiff's 23 requests to United, only 2 (numbers 19 and 20) did not request documents. (Ex. P.) Those two requests asked United to identify potential witnesses and individuals with knowledge of the facts alleged in the Complaint, which was information that United had already provided in its Verified MIDP Response on November 12, 2019 and which United referenced in its response. (Exs. A and U.)

but which United was able to produce after the Court entered United's proposed Confidentiality Order (over Plaintiff's objection (Dkt. Nos. 78, 80, 84, 94)). (Exs. T and W.)

The next day, Plaintiff sent counsel for United several emails stating that he was "waiting on [United's] answer to rule 33 Interrogatories." (*See* Ex. V.) United's counsel responded that because Plaintiff's "Interrogatories" were more in the nature of requests for production, United treated them as such, but invited Plaintiff to explain if there was anything more specific he needed, or if there were specific requests that he wanted United to answer as interrogatories. (*Id.*) However, Plaintiff never responded. He subsequently filed the instant Motion on December 1, 2020. (Dkt. No. 99.)

## **ARGUMENT**

### I.  **PLAINTIFF'S MOTION TO COMPEL SHOULD BE DENIED.**

#### a.  **Legal Standard for a Motion to Compel.**

Under Federal Rule of Civil Procedure 26(b), discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). A party seeking to compel discovery pursuant to Rule 37 "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a); *see also* Local Rule 37.2. District courts have broad discretion in deciding motions to compel. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 784 (7th Cir. 2013) (affirming district court's denial of plaintiff's motion to compel and for sanctions).

#### b.  **Plaintiff Failed to Comply With Local Rule 37.2 Regarding His "Interrogatories".**

As a threshold matter, while Plaintiff emailed United regarding its answers and objections to his October 13 "Interrogatories", he did not confer with United as required by

Local Rule 37.2. Indeed, United asked Plaintiff to clarify what additional information he needed (*see* Ex. V), and Plaintiff failed to respond. His Motion should be denied on this basis alone. *See Jagla v. LaSalle Bank*, No. 05 C 6460, 2006 U.S. Dist. LEXIS 73834, at **35-36 (N.D. Ill. Sept. 26, 2006) (holding plaintiff's motion to compel, which failed to include a Local Rule 37.2 statement of effort to reach an accord, was "procedurally defective" and warranted denial for that reason alone).

### c. Plaintiff's General Complaints About Discovery Are Unfounded.

Plaintiff first raises several general complaints about discovery that are without merit and misrepresent the parties' November 10 discovery conference.

*First*, Plaintiff claims that United "fail[ed] to respond to Attorney Mocks [sic] August 27, 2020 letter." (Dkt. No. 99 at 1.) However, no written response was necessary, as the Court's May 29, 2020 Order only required United to respond to Plaintiff's renewed settlement demand by July 27, 2020, which it did. (Dkt. No. 66.) Additionally, contrary to Plaintiff's claim, he did not ask counsel for United during the November 10 discovery conference why United did not respond to the August 27 letter.

*Second*, Plaintiff claims that counsel for United during the discovery conference would not "engage in answering Interrogatories questions [sic] would not answer [his] questions on the January 12, 2013 Video Chain of Custody." (Dkt. No. 99 at 1.) During the November 10 discovery conference call, Plaintiff demanded that United provide him information regarding the "chain of custody" for video footage of the gate at which he worked on January 12, 2013 and asked a number of additional questions about the video footage. Counsel for United explained to Plaintiff that his Request for Production No. 3, which only requested video footage for various gates at O'Hare Airport, did not include a request for information pertaining to any chain of

7

custody, and that United had previously produced video footage for the gate he worked at on the day in question on February 17, 2020. (*See* Exs. H, J and W.) Counsel for United also explained to Plaintiff that a discovery conference was not the proper way to conduct additional discovery in the form of Interrogatories and that those needed to be separately served.

*Third*, Plaintiff raises several complaints regarding the parties' MIDP responses, none of which demonstrate bad faith or a failure by United to engage in discovery or comply with the MIDP Standing Order. Plaintiff believes that United "fail[ed] to answer ESI questions" and did not respond to "Standard Order MIDR C." (Dkt. No. 99 at 1-3, 7-8.) However, Plaintiff did not raise ESI during the November 10 discovery conference, and neither he nor his previous attorney ever asked about ESI. Nor did United indicate in its MIDP Responses that it had any ESI in its custody, possession or control that was relevant to this matter. *See* MIDP Standing Order Section C (parties are to confer regarding ESI only "[w]hen the existence of ESI is disclosed or discovered."). In the absence of any disclosure or discovery of ESI, there was no need for United to "answer ESI questions" or "respond to Standard Order MIDR C."

Further, Plaintiff cites to Section C of his own MIDP Response, which requested ESI be produced in hard copy format with an index and CD. (Dkt. No. 99 at 2-3.) However, as set forth above, the parties have not conferred over ESI nor is there any indication that relevant ESI exists. United has produced relevant hard copy documents and Plaintiff has not explained why United's productions are insufficient (which they are not). In sum, United has fully complied with its obligations under the MIDP Standing Order with respect to the production of documents.

*Fourth*, Plaintiff takes issue with United's use of Bates labels to refer to documents produced in discovery, and claims this indicates "bad faith". (Dkt. No. 99 at 2.) The use of Bates labels to direct a party to responsive documents is normal practice in discovery. *See Next*

*Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 17 C 8829, 2018 U.S. Dist. LEXIS 129374, at *53 n.10 (N.D. Ill. July 21, 2018) ("A 'Bates number' is a unique number affixed to each page of the documents produced in discovery that allows the parties and the Court to readily locate any reference to discovery materials.") United sent Plaintiff its document productions multiple times (in February, in June in response to Mr. Mock's request, and again on November 10), and referred to responsive documents by Bates label in its discovery responses. If anything, this is helpful to Plaintiff in that United assisted in directing him to relevant documents. And, nothing in the rules requires an "index, key or password" as Plaintiff alleges. United's document productions do not require a password, and United's discovery responses describe the types of documents that the Bates labels refer to, which (again) is helpful to Plaintiff. (*See* Exs. J, U, W and X.)

*Fifth*, Plaintiff speculatively (and incorrectly) claims that United in "the last paragraph of page 3" intends "to use the Confidentiality Order to suppress/destroy the names of UAL employee witness [sic] and signed UAL's Confidentiality statements of witness [sic]". (Dkt. No. 99 at p. 2.) This is not true. All United stated in the last page of its November 13, 2020 letter was that because the Court had entered the Confidentiality Order in this matter (Dkt. No. 80), United the previous day had produced confidential documents to Plaintiff and was requesting that he maintain the confidentiality of those documents. (Ex. W.)

*Sixth*, Plaintiff (Dkt. No. 99 at 4) objects to United's statement that it would produce certain documents pertaining to profit sharing and benefits information "after a reasonable search" in its responses to the production requests. This is entirely permissible and exactly what United did. Indeed, pursuant to Federal Rule Civil Procedure 26(e), United supplemented its responses after further investigation with additional responsive documents. (*See* Exs. W and X.)

9

*See Young v. Verizon's Bell Atl. Cash Balance Plan*, No. 05 C 7314, 2007 U.S. Dist. LEXIS 88392, at **7, 17 (N.D. Ill. Dec. 3, 2007) (noting defendants complied with discovery obligations by making a "reasonable search for the requested documents").

### d. United Has Fully Responded to Plaintiff's Requests for Production of Documents.

Notably, with respect to his production requests, Plaintiff does not argue that United has failed to respond or that United is withholding documents. (Dkt. No. 99 at 4-5.) Indeed, any such argument would be meritless, as United (1) timely responded to Plaintiff's requests in February 2020, and produced over 1,400 pages of documents to him at that time; (2) conducted a discovery conference with Plaintiff on November 10, 2020 in good faith, during which counsel for United explained its objections and Plaintiff attempted to explain what additional documents he was seeking; and (3) engaged in further reasonable searches for responsive documents after the discovery conference and produced over 200 additional pages of documents to Plaintiff on November 12 and December 4. (Exhibits F, I, J, K, T, W and X.)

Instead, Plaintiff argues that (1) United's objections to his Requests for Production of Documents were "boilerplate" and (2) United's references to the Bates labels of documents produced were without "instruction, index, key or password". (Dkt. No. 99 at 4-5.) With respect to United's objections, they are not boilerplate, and in any event, United fully explained the basis for each of its objections during the parties' November 10 discovery conference. As for United's production of Bates labeled documents without "instruction, index, key or password," this is not required by the Federal Rules of Civil Procedure or the Local Rules. Moreover, as explained in Section I.c *supra*, United's discovery responses directed Plaintiff to identified Bates ranges, which can assist him in determining what was produced.

Plaintiff also speculates that video footage of an incident that allegedly occurred in 2013 while he was employed at United (he alleges a co-worker pushed him) "has been destroyed". (Dkt. No. 99 at 4.) However, as United's counsel explained during the November 10 discovery conference, United produced to Plaintiff video footage of the gate he was working at on the morning of January 12, 2013, in response to his discovery requests. (Exs. H, J and W.) And, counsel for United confirmed that video footage from 2013 for other gates at which Plaintiff did not work is no longer available. (Ex. X.) Plaintiff's speculation that video footage has been destroyed is baseless, and does not provide grounds for his Motion, particularly where video footage for other gates is not relevant. *See Jagla*, 2006 U.S. Dist. LEXIS 73834, at *36 (denying motion to compel where plaintiff's accusations that defendant was concealing documents were based on mere speculation); *United States CFTC v. Newell*, 301 F.R.D. 348, 354 (N.D. Ill. 2014) ("The defendant cannot produce documents which do not exist. Mere speculation that there is more will not suffice.") (citation and quotation omitted).

In sum, United has fully complied with its discovery obligations regarding Plaintiff's Requests for Production of Documents, and there is nothing for the Court to compel.

  e. **United Properly Responded to Plaintiff's "Interrogatories".**

Plaintiff takes issue with United's answers and objections to his "Interrogatories", which were actually styled as document requests. (Exs. P and U.) Once again, his arguments are meritless, and he does not actually identify anything that he believes is missing from United's answers that the Court should compel.

Specifically, Plaintiff alleges that United should have told him before November 12, 2020—when its answers and objections to his "Interrogatories" were due—"if they felt that the [Interrogatories] heading on the first page was in error". (Dkt. No. 99 at 5.) He further speculates

11

that "Defendant is attempting to use this as a ruse to not answer the Interrogatories." (*Id*.) Plaintiff's arguments are baseless. United timely answered Plaintiff's "Interrogatories" on November 12, and at that time properly indicated in its answers that Plaintiff's "Interrogatories" were actually requests that sought the production of documents, and responded accordingly. (Ex. U.) Additionally, in response to Plaintiff's November 13 emails where he claimed he was "waiting on [United]s answer to rule 33 Interrogatories," counsel for United asked him to identify which requests he believed should have been answered as interrogatories, but Plaintiff never responded. (Ex. V.)

Even if Plaintiff's requests were styled as interrogatories, United's answers, which referred to responsive documents, were proper and permissible under Federal Rule of Civil Procedure 33(d), which allows parties to respond to interrogatories by referencing responsive documents. *See* Fed. R. Civ. P. 33(d) ("If the answer to an interrogatory may be determined by examining…a party's business records…and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by…specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."). As such, there was nothing wrong or improper with United's answers to Plaintiff's "Interrogatories".

Plaintiff also falsely states that "Counsels [sic] would not discuss the pending Interrogatory due 11/12/2020" during the November 10, 2020 discovery conference. (Dkt. No. 99 at 6.) Plaintiff, however, requested the November 10 conference in order to discuss United's responses and objections to his Requests for Production of Documents. (*See* Exs. Q, R and W.) Also, the answers were not yet due so there would not have been anything to discuss about United's answers. *See* Fed. R. Civ. P. 33(b) and 34(b) (providing 30 days for a party to respond

12

to discovery requests). Most importantly, at no time during the November 10 conference did Plaintiff ask about the "Interrogatories".

Plaintiff then repeats his complaint that United's objections were "boilerplate" and that United referred to the Bates labels of documents without an "instruction, index, key, or password". These arguments fail here for the same reasons discussed above. United explained the basis for each of its objections (*see* Ex. U), and there is no need for instructions, an index, key, or password where United identified Bates ranges in its responses to assist Plaintiff in identifying documents. *See CLEAResult Consulting, Inc.*, 2018 U.S. Dist. LEXIS 129374, at *53 n.10.

In sum, United timely and properly answered and objected to Plaintiff's "Interrogatories", and Plaintiff does not identify any information or documents that he believes should have been provided. Plaintiff does not actually request the Court to compel anything from United, such that his Motion should be denied on this basis alone.

### f. Plaintiff is Not Entitled to Sanctions.

Nothing in Plaintiff's Motion demonstrates that he is entitled to sanctions. A court may impose discovery sanctions pursuant to Fed. R. Civ. P. 37(b)(2) for violation of a court order, or under its own "inherent powers to impose sanctions for the abuse of the judicial system, including the failure to preserve or produce documents." *Daniels v. Spencer Gifts, LLC*, No. 10 C 5345, 2012 U.S. Dist. LEXIS 17976, at *21 (N.D. Ill. Feb. 14, 2012). Neither ground justifies sanctions here.

While Plaintiff argues that United violated the MIDP Standing Order because it "never responded to the MIDR and proceeded to other discovery" (Dkt. No. 99 at 6-7), as explained above, United timely provided its MIDP Responses to Plaintiff, and there was no need for United

13

to "answer ESI questions" or "respond to Standard Order MIDR C." (Dkt. No. 99 at 1-3, 7-8.) (*See* Ex. A.) United did not violate the MIDP Standing Order, and Plaintiff does not identify any other Court order which United could have violated (indeed, because there is none).

Further, as described above, Plaintiff does not identify any discovery requests to which he believes United failed to respond, and does not identify any documents or information that he believes United has failed to produce or is withholding. To the contrary, the discovery record in this case demonstrates that United has diligently cooperated with Plaintiff by providing him with its document productions multiple times; timely and fulsomely responding to his discovery requests; conducting a good-faith discovery conference with Plaintiff on November 10 regarding his Requests for Production of Documents; searching for and producing additional documents to Plaintiff after he clarified certain of his requests during the November 10 conference; and inviting Plaintiff to clarify which of his October 13 "Interrogatories" (almost all of which requested documents) he wished to have answered differently or how (which he did not do). (*See* Relevant Background Section above and exhibits cited therein.)

The Court should deny Plaintiff's request for sanctions where, as here, the record shows United's "continuing willingness, even eagerness, to resolve the issues at hand." *Daniels*, 2012 U.S. Dist. LEXIS 17976, at *25 (denying plaintiffs' motion for sanctions).

## **CONCLUSION**

WHEREFORE, Defendant United Airlines, Inc. respectfully requests that this Honorable Court deny Plaintiff's Motion in its entirety, and enter any other relief the Court deems just and appropriate.

Dated: December 18, 2020 Respectfully submitted,

        s/Jill S. Vorobiev
Jill S. Vorobiev (6237734)
Amy I. Harwath (6324021)
Reed Smith LLP
10 S. Wacker Dr., Suite 4000
Chicago, IL 60606
Tel: (312) 207-1000
Fax: (312) 207-6400
Email: jvorobiev@reedsmith.com
Email: aharwath@reedsmith.com

*Counsel for Defendant United Airlines, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 18, 2020, the foregoing *Defendant United Airlines, Inc.'s Response to Plaintiff's Motion to Compel Production of Documents Responsive to Plaintiff's Second Request for Production of Documents and First Request for Production of Interrogatories and for Sanctions* was filed through the Court's CM/ECF system and served on the following *pro se* Plaintiff via e-mail:

Lionell Kline
9212 S. Essex Ave.
Chicago, IL 60617
Lionell.kline2840@gmail.com

                                               s/Jill S. Vorobiev
                                               One of the Attorneys for United Airlines, Inc.