**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Lionell Kline,

      Plaintiff,

v.

United Airlines, Inc.,

      Defendant.

Case No. 19 C 5291

Hon. LaShonda A. Hunt

### MEMORANDUM OPINION AND ORDER

Defendant United Airlines, Inc. terminated *pro se* Plaintiff Lionell Kline's employment after determining that Kline had falsely accused a coworker of assault. Kline then sued United for discrimination based on age and race, and retaliation. Currently before the Court is United's motion for summary judgment on all of Kline's claims. For the reasons discussed below, the motion [159] is granted.

### LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the burden of establishing the lack of any material fact dispute. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court must resolve all disputes and draw all reasonable inferences in favor of the non-movant. *Dietchweiler v. Lucas*, 827 F.3d 622, 627 (7th Cir. 2016).

The party opposing summary judgment must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "The mere existence of a scintilla of evidence in

1

support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. Indeed, the nonmoving party "must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Domka v. Portage Cnty.,* 523 F.3d 776, 783 (7th Cir. 2008) (quoting *United States v. Ritz*, 721 F.3d 825, 827 (7th Cir. 2013)) (internal quotations and citations omitted). Summary judgment is the time for a litigant to "put up or shut up" by "show[ing] what evidence it has that would convince a trier of fact to accept its version of events." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020)).

## SUMMARY JUDGMENT PROCEDURE

Summary judgment motions are governed by Fed. R. Civ. P. 56 and Local Rule 56.1. First, the party seeking summary judgment must file a motion, memorandum of law, and statement of material facts which comply with format, content, and citation requirements and attach relevant evidentiary material. L.R. 56.1(a), (d), and (g). Next, the party opposing summary judgment must file a memorandum of law in opposition and a response to the movant's statement of material facts which comply with format, content, and citation requirements and attach relevant evidentiary material. L.R. 56.1(b), (e), & (g). The party opposing summary judgment may also file a statement of additional material facts that complies with the same requirements. L.R. 56.1(b)(3) and (d). The moving party may then file a memorandum of law in reply and a response to the statement of additional material facts, if any, filed by the non-moving party. L.R. 56.1(c). Assertions of fact that are not controverted by the opposing party with evidence are deemed admitted. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact

undisputed for purposes of the motion[.]"); Local Rule 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material."); *Hartford Fire Ins. Co. v. Taylor*, 903 F. Supp. 2d 623, 647 (N.D. Ill. 2012) ("When a proposed statement of fact is supported by the record and not adequately controverted by the opposing party, the Court will accept that statement as true.").

Local Rule 56.2 requires movants to provide a special notice to unrepresented litigants opposing summary judgment that explains these requirements in plain English.[1] Although the Court must liberally construe filings by self-represented parties like Kline, *Eagan v. Dempsey*, 987 F.3d 667, 689 (7th Cir. 2021), even self-represented parties must follow procedural rules. *See McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 787 n.2 (7th Cir. 2019) (citing *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998)). "A party's obligation to support its facts with evidence is mandatory, and the Seventh Circuit repeatedly has held that the district court is within its discretion to enforce strict compliance with the requirements of Local Rule 56.1." *Hanover Ins. Co. v. House Call Physicians of Ill.*, No. 15 C 3684, 2016 WL 1588507, at *2 (N.D. Ill. Apr. 19, 2016) (citing *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 537 (7th Cir. 2011); *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 359 (7th Cir. 2009); *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000)); *see also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

---

[1] After reviewing the summary judgment papers, the Court determined that there was no record of United's compliance with Local Rule 56.2. Accordingly, on June 11, 2024, the Court directed Kline to file a status report stating whether he had received the required Local Rule 56.2 notice and United to either file a certificate of compliance or a status report stating that it could not certify compliance. (Minute Order, Dkt. 198). The parties' filings reflected that United had failed to comply with Local Rule 56.2. (Status Reports, Dkts. 199, 200). Thus, to cure any harm or prejudice suffered as a result of United's non-compliance, the Court required compliance, granted Kline an opportunity to file a supplemental response, and allowed United to file a supplemental reply. (Minute Order, Dkt. 201).

## BACKGROUND

### I.     Undisputed and Admitted Facts

The following facts are taken from United's Local Rule 56.1(a)(2) statement of material facts, (DSOF, Dkt. 165), and the Declaration of Lionell Kline, which the Court construes as Kline's Local Rule 56.1(b)(3) statement of additional material facts, (PSOF, Dkt. 173). Unless otherwise noted, these facts are either undisputed or treated as having been admitted because Kline's Local Rule 56.1(b)(2) response to United's statement of material facts, (Resp. at 3-26, Dkt. 175), does not comply with Local Rule 56.1(e). Specifically, in response to United's statement of material facts, Kline did not dispute Paragraphs 1, 2, 3, and 9; did not respond to Paragraph 19; and disputed the remaining assertions because "[t]he numbers are unknown." (*Id.* at 3-26). Even the most generous interpretation of Kline's vague basis for disputing United's assertions of fact is insufficient because it fails to explain how the assertions of fact are controverted and does not cite any evidentiary material. (*Id.*) Furthermore, many of the exhibits purportedly attached to the response are missing.[2] (*Id.*) When given the opportunity to file a supplemental response due to Untied's initial non-compliance with Local Rule 56.2, Kline filed two supplemental responses. (Supp. Resps., Dkts. 204, 204). Both filings contained various statements concerning present circumstances in Kline's life, past discovery disputes and rulings, settlement discussions, and miscellaneous events that are largely irrelevant to the present proceeding. Neither supplemental response contained any factual assertion, legal argument, or evidentiary material sufficient to

---

[2] Kline appears to claim that he was unable to provide all the exhibits to his response due to family members suffering from serious illnesses. However, Kline did not seek leave to subsequently file the missing exhibits through his response or a separate motion. Accordingly, the Court considers only the exhibits submitted by Kline in connection with his response and supplemental responses.

controvert United's assertions of fact.[3] Put simply, United's assertions of fact are deemed admitted because, although Kline stated that he disputed them, he failed to provide any explanation or evidence to controvert them after having been given multiple opportunities to do so. Accordingly, based on the facts that are undisputed or have been deemed admitted, the relevant background is as follows.

## II.  **Employment History**

Kline is a resident of Chicago, Illinois, who is Black and was born in 1962. (DSOF ¶¶ 1, 10; PSOF ¶ 1). United hired Kline in either 1987 or 1988[4] as a ramp serviceman and promoted him to lead ramp serviceman in 1995. (DSOF ¶ 11; PSOF ¶¶ 2, 4). In that role, Kline was responsible for servicing aircraft and automobile equipment at ramps and other locations and for leading, directing, and training other employees of lower classification. (DSOF ¶ 12; PSOF ¶ 3).

The rules applicable to Kline's employment included United's "Working Together Guidelines" ("WTG"), essentially an employee handbook, and a collective bargaining agreement ("CBA") between United and the International Association of Machinists and Aerospace Workers (the "Union"). (DSOF ¶¶ 14-16). The WTG sets forth policies concerning harassment, discrimination, reporting offensive workplace behavior, and protection against retaliation. (*Id.* ¶ 14). It also included the expectation of "Honesty," which required employees to "[b]e truthful in all communications, whether oral, written or electronic." (*Id.* ¶ 15). The CBA permits United to hold an employee out of service pending investigation of an incident that may result in disciplinary action and does not require letters of prior discipline before disciplinary action is taken against an

---

[3] Subsequently, Kline also filed two motions for extension of time to respond, (Dkts. 206, 207), which the Court terminates as moot in light of his previously filed supplemental responses.

[4] United states that it hired Kline on May 24, 1988, (DSOF ¶ 11), but Kline asserts that United hired him on December 13, 1987, (PSOF ¶ 2). The discrepancy is immaterial to the present dispute.

employee. (*Id.* ¶ 18). The CBA contained a letter of agreement that provides for progressive discipline but also does "not limit the [United's] current rights to discharge employees for a single serious offense . . . ." (*Id.* ¶ 17). The CBA expressly reserves United's right to discharge or discipline for cause. (*Id.* ¶ 21).

By all accounts, Kline's performance was satisfactory for the majority of his time at United, as evidenced by his recognition for 25 years of faithful service. (PSOF ¶ 2). Beginning in 2011 and 2012, however, Kline lodged several complaints. Among other things, he accused a coworker of lunging at him and lurking in his area; claimed that there was a conspiracy involving his supervisor and a human resources manager; complained about having to work with a damaged piece of equipment; reported a pilot who was speeding and hit him in a parking lot; and believed that he received more gate changes than others. (DSOF ¶¶ 22-36).

### III. <u>Reported Assault</u>

Finally, on January 16, 2013, Kline told his supervisor that a coworker named Daniel Loner had recently pushed him while they were working at Gate B-9. (*Id.* ¶ 37; PSOF ¶ 6). A few days later, Kline filed a police report, and Loner was arrested while at work. (DSOF ¶ 38; PSOF ¶ 6). According to Kline's supervisor, Kline said that he was not injured when he initially reported the incident. (DSOF ¶ 37). Kline claims, however, that the physical contact caused pain to his right arm, shoulder, back, and side. (PSOF ¶ 5). Kline's supervisor told him to submit a written statement and said they would meet on January 19, 2013, to begin an investigation. (DSOF ¶ 39; PSOF ¶ 6). On January 19, 2013, Kline submitted the following written statement:

> On 1/14/13[LK] while bringing in a flight, I lead RSM Lionell Kline was assaulted by RSM Loner. As I was holding the ACU pack attempting to bring the flight in. This person (Loner) pushed me with both arms!!! Now why I don't know! I had to do my best to keep

myself from falling to the ground. This whole incident has left me
traumatized!!!

End of statement

LDRSM

Lionell Kline

17616

(DSOF, Ex. 11, Dkt. 166 at 19). Subsequently, on January 29, 2013, Kline filled out an employee
injury statement, again reporting that the incident had occurred on January 14, 2013. (DSOF ¶ 41).
But the following day, after Kline viewed video footage from Gate B-9 on January 14, 2013, he
sought to change the date of the incident to January 13, 2013. (*Id.* ¶ 42).

During the investigation, Loner denied pushing Kline. (*Id.* ¶ 44). Another coworker who
initially claimed to have witnessed the incident later recanted her statement. (*Id.* ¶ 45).
Specifically, in the coworker's first statement she said, "Loner pushed Lionille [sic] when he was
walking toward him." (DSOF, Ex. 13, Dkt. 166 at 23). Later, she reported the following: "I didn't
see anything. No pushing or Anything."; "I assumed that he got pushed And Lionelle [sic] told me
he got pushed."; and "I did not see him get push [sic] Lionelle [sic] or Loner. 12, 13, 14 of January."
(*Id.* at 24-27). Kline claims that four supervisors threatened to fire the coworker if she did not
recant, but he provided no evidence in support of this assertion. (PSOF ¶ 12). Work assignment
calendars for Kline and Loner showed that they did not work in the same areas on January 13 or
14, 2013, and video footage from Gate B-9 on those dates did not show Loner pushing Kline.
(DSOF ¶ 46-47). As part of the investigation, United also reviewed video footage of Gate B-9 on
January 12, 2013, a day that Kline and Loner worked together in the same area. (*Id.* ¶ 48). That
video shows an employee lightly patting another employee on the shoulder as he walked by; there
is no footage of any employee being pushed. (DSOF, Ex. 21 at 2:09:00).

## IV.  **Disciplinary Proceedings and Termination**

Based on the investigation, Kline's supervisor sent a Notice of Investigative Review Hearing dated May 6, 2013, informing Kline that "it is the company's decision to propose a Level 5 discharge for violation of the Working Together Guidelines for falsely accusing a co-worker of assault, falsely claiming an injury at work and making false statements in a company investigation." (DSOF ¶ 51, Ex. 18, Dkt. 166 at 45). On May 30, 2013, a hearing officer conducted the Investigative Review Hearing, considered the positions of the company and the Union on Kline's behalf, and determined that Kline's employment should be terminated effective that day. (DSOF ¶ 56). The Union grieved Kline's termination, and a "Third Step Appeal" hearing was held on November 26, 2013. (*Id.* ¶ 60). During that hearing, the Union claimed for the first time that the incident happened on January 12, 2013, not January 13 or 14, 2013, as previously reported by Kline. (*Id.* ¶ 61). The hearing officer reviewed video footage from all three dates, concluded that Loner did not push Kline, and upheld the termination decision because Kline had "lied in his statements, and therefore violated the WTG." (*Id.* ¶ 61, Ex. 20, Dkt. 166 at 54-59). Kline's subsequent requests for a Step Four hearing went unanswered. (PSOF ¶ 26).

## V.  **Charges of Discrimination**

### A.  **First Charge**

In the middle of United's investigation, on February 7, 2013, Kline filed a charge of discrimination (the "First Charge") with the Equal Employment Opportunity Commission (EEOC). (DSOF ¶ 3, Ex. 36, Ex. A, Dkt. 166 at 138). The First Charge covered the time period up through January 30, 2013, and complained of race-based harassment, discrimination, and retaliation. (*Id.*) The statements were conclusory and offered no specific facts in support. (*Id.*) The EEOC issued a Notice of Right to Sue on February 22, 2013. (DSOF ¶ 3, Ex. 36, Ex. B).

B.      **Second Charge**

On February 19, 2013, less than two weeks after filing the First Charge, Kline filed another charge of discrimination (the "Second Charge"), this time with the Illinois Department of Human Rights (IDHR), which was cross-filed with the EEOC. (DSOF ¶ 4, Ex. 9, Dkt. 166 at 12-14). The Second Charge covered the time period from August 22, 2012, through February 13, 2013, and complained of race and age-based harassment, discrimination, and retaliation. (*Id.*) Specifically, Kline claimed that coworkers had harassed him by approaching him in a violent and threatening manner, he was assigned more flights and gate changes to work than others, and he was subjected to unequal terms and conditions after complaining about discrimination.[5] (*Id.*)

The IDHR issued a Notice of Dismissal for Lack of Substantial Evidence for the Second Charge on March 6, 2014. (DSOF ¶ 5, Ex. 28, Dkt. 166 at 104). Kline requested review of the dismissal with the Illinois Human Rights Commission (IHRC), and the IHRC sustained dismissal with a written decision on February 22, 2019. (*Id.*, Ex. 29, Dkt. 166 at 106-08). Concerning the video of Gate B-9 on January 12, 2013, the IHRC order stated, "The [IDHR's] investigation revealed video that showed Loner place his hand on the [Kline's] back but did not show the [Kline] react, or nearly fall, or any interruption in the aircraft's movement." (*Id.*) Subsequently, on September 5, 2019, the EEOC issued a Notice of Right to Sue. (*Id.*, Ex. 30, Dkt. 166 at 110).

C.      **Third Charge**

On June 17, 2013, Kline filed a third charge of discrimination. (DSOF ¶ 6, Ex. 31, Dkt. 166 at 112-13). The Third Charge covered the time period up through June 14, 2013, and alleged that United had terminated Kline based on his age and in retaliation for having filed the Second

---

[5] Of note, in the Second Charge, Kline wrote in two different places that Loner assaulted and pushed him on February 13, 2013—it is unclear where that date came from. (*Id.*)

Charge. (*Id.*) The IDHR issued a Notice of Dismissal for Lack of Substantial Evidence on May 21, 2014. (DSOF ¶ 7, Ex. 32, Dkt. 166 at 116-17). After Kline sought IHRC review, the IHRC sustained dismissal of the age discrimination claim but remanded the retaliation claim for entry of a finding of substantial evidence, and the IDHR issued a Finding of Substantial Evidence on May 3, 2019. (*Id.*, Ex. 33, Dkt. 166 at 119-20). On November 2, 2021, the IDHR issued a Notice of Right to Sue for the Third Charge. (*Id.*, Ex. 36, Ex. C, Dkt. 166 at 142).

## VI.     Procedural History

Kline filed this lawsuit on August 5, 2019. (Compl., Dkt. 1). As amended on December 5, 2019, the operative complaint asserts the following claims: (Count I) race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII); (Counts II and III) age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (ADEA); (Count IV) retaliation under Title VII; (Count V) race discrimination the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq. (IHRA); and (Count VI)[6] retaliation under the IHRA. (Am. Compl., Dkt. 46). After the close of discovery, United moved for summary judgment.

## DISCUSSION

United argues first, that the majority of Kline's claims are procedurally barred, and second, there is no evidence of race or age discrimination or retaliation. In response, Kline generally asserts that genuine disputes and triable issues of fact exist for all of his claims. Kline further accuses United of destroying records and asserts that United engaged in sabotage and refused to cooperate during discovery. Because Kline's response did not directly address many of United's arguments, United asserts that he has waived claims, forfeited arguments, and essentially confirmed that no

---

[6] The Amended Complaint contains two Count V's, so the Court will refer to the second Count V, the IHRA retaliation claim, as Count VI throughout this Opinion.

dispute of material fact exists. As discussed below, the Court finds that United is entitled to summary judgment in its favor.

## I. Effect of EEOC, IDHR, and IHRC Decisions

As previously explained, Kline filed three charges of discrimination at the administrative level. The First Charge was dismissed in 2013, and no further action was taken until Kline filed this case in 2019. The Second and Third Charges were initially dismissed but then reviewed at Kline's request by the IHRC. All claims arising from the Second and Third Charges were dismissed, except the retaliation claim in the Third Charge, for which there was a finding of substantial evidence. Consequently, United contends that Kline cannot proceed on certain claims.

### A. First Charge

"Under Title VII, the plaintiff must file suit within 90 days of receiving a right to sue letter from the EEOC." *Hayes v. Nw. Mem'l Hosp.*, No. 23-1459, 2023 WL 8106977, at *2 (7th Cir. Nov. 22, 2023) (citing 42 U.S.C. § 2000e-5(f)(1); *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1847 (2019)). Kline filed the First Charge with the EEOC on February 7, 2013. Although the EEOC issued a right to sue letter on February 22, 2013, Kline did not initiate this action until five years later, in August 2019, well after the 90-day deadline. Kline did not respond to this argument, dispute the issuance or timing of the right to sue letter for the First Charge, or come forward with any evidence on this issue. Kline's only argument on this point appears in the Amended Complaint, where he alleges that the First Charge "may have been wrongfully destroyed by the EEOC in 2014." (Am. Compl. ¶ 37). However, this is insufficient at the summary judgment stage because "a non-moving party may not rely solely on the allegations in his complaint to defeat summary judgment." *Shermer v. Illinois Dep't of Transp.*, 171 F.3d 475, 478 (7th Cir. 1999) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Weicherding v. Riegel,* 160 F.3d 1139, 1142 (7th Cir.

1998)). Because the undisputed and uncontroverted evidence produced by United shows that Kline did not timely sue about claims arising from the First Charge, those claims are now barred.

### B. <u>Second and Third Charges (Excluding Retaliation)</u>

Section 7A-102(d)(3) of the IHRA sets forth the procedure after the IDHR dismisses a charge of discrimination for lack of substantial evidence:

> If the Director determines that there is no substantial evidence, the charge shall be dismissed by the Director and the Director shall give the complainant notice of the complainant's right to seek review of the notice of dismissal before the Commission or commence a civil action in the appropriate circuit court. If the complainant chooses to have the Human Rights Commission review the notice of dismissal, the complainant shall file a request for review with the Commission within 90 days after receipt of the Director's notice. **If the complainant chooses to file a request for review with the Commission, the complainant may not later commence a civil action in a circuit court.** If the complainant chooses to commence a civil action in a circuit court, the complainant must do so within 90 days after receipt of the Director's notice. The complainant shall notify the Department that a complaint has been filed by serving a copy of the complaint on the chief legal counsel of the Department within 21 days from the date that the complaint is filed in circuit court. This 21-day period for service on the chief legal counsel shall not be construed to be jurisdictional.

775 ILCS 5/7A-102(D)(3) (emphasis added). Essentially, a person whose charge is dismissed for lack of substantial evidence by the IDHR may proceed in one of two ways: (1) request review by the IHRC or (2) file a civil lawsuit in state court. *Aberman v. Bd. of Educ. of City of Chi.*, No. 12 C 10181, 2013 WL 5290048, at *3 (N.D. Ill. Sept. 17, 2013). If the complainant obtains review by the IHRC but is unhappy with its decision, he may seek judicial review by the Illinois Appellate Court. 775 ILCS 5/8-111(B)(1). But the complainant "may not later commence a civil action in a circuit court." 775 ILCS 5/7A-102(D)(3).

The undisputed record in this case reflects that the IDHR dismissed Kline's Second Charge for lack of substantial evidence, Kline sought and obtained review by the IHRC, and the IHRC sustained the IDHR's finding. Kline does not present evidence that he appealed the IHRC's final decision on the Second Charge to the Illinois Appellate Court. Subsequently, the EEOC, with which the Second Charge had been cross-filed, issued a right to sue letter for any federal claims arising from the Second Charge.

Finally, as to the Third Charge, the undisputed record reflects that Kline also sought IHRC review of his age discrimination and retaliation claims. The IHRC sustained the IDHR finding of a lack of substantial evidence as to the age discrimination claim but remanded as to the retaliation claim. The IDHR subsequently issued a Finding of Substantial Evidence and Notice of Right to Sue for the retaliation claim in the Third Charge. Again, Kline does not present evidence that he appealed the IHRC decision on the age discrimination claim to the Illinois Appellate Court.

In light of Kline's choice to seek review of IDHR's dismissal of the Second and Third Charges with the IHRC and the ultimate disposition of those charges, United argues that Kline is barred from pursuing any IHRA claims arising from the Second Charge and any IHRA age discrimination claim arising from the Third Charge. Again, Kline did not respond to this argument, dispute United's account of the administrative history, or produce any evidence to the contrary. Thus, except for the retaliation claim in the Third Charge, Kline is barred from now bringing any IHRA claims that arise from the Second and Third Charges pursuant to 775 ILCS 5/7A-102(D)(3).

## II.  <u>Race Discrimination Claims</u>

Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). When a defendant moves for summary judgment in a race discrimination case, "the 'singular question' for the district court is whether the plaintiff has introduced evidence that would 'permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action.'" *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021) (quoting *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir.), *reh'g denied* (July 31, 2020)). Put another way, "[a]t summary judgment, '[w]hat matters is whether [a plaintiff] presented enough evidence to allow the jury to find in [his] favor.'" *Igasaki*, 988 F.3d at 958 (quoting *Vega v. Chicago Park Dist.*, 954 F.3d 996, 1004 (7th Cir. 2020)).

"One way of proving employment discrimination under Title VII remains the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 . . . (1973)." *Igasaki*, 988 F.3d at 957. Under *McDonnell Douglas*, a plaintiff must first make a prima facie case by showing: "(1) he belongs to a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated employee outside of his protected class received better treatment from his employer." *Id.* If the plaintiff makes a prima facie case, then "the burden shifts to the employer to offer a nondiscriminatory motive, and, if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext." *Igasaki*, 988 F.3d at 957 (quoting *Purtue*, 963 F.3d at 601-02).

To the extent that a plaintiff's race discrimination claims are based on harassment and a hostile work environment, he must show that "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Mahran v. Advocate Christ Med. Ctr.*, 12 F.4th 708, 714 (7th Cir. 2021)

14

(quoting *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018)). "Whether harassment qualifies as severe or pervasive depends on contextual factors such as 'the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Mahran*, 12 F.4th at 715 (quoting *Abrego*, 907 F.3d at 1015).

In the Amended Complaint, Kline asserts race discrimination claims in Count I (Title VII) and Count V (IHRA). As discussed in Section I above, any race discrimination claims arising from the First Charge are time-barred and any race discrimination claims under the IHRA contained in the Second Charge are barred under 775 ILCS 5/7A-102(D)(3). Since Kline's Third Charge did not raise race discrimination, the only surviving race discrimination claims are those arising under Title VII that were contained in the Second Charge. Nevertheless, the Court will address all of Kline's race discrimination claims for the sake of completeness and because the standards under Title VII and the IHRA are the same. *See Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) ("Illinois courts apply the federal Title VII framework to IHRA claims.").

Kline's race discrimination claims are based on a wide range of alleged conduct, including disparate treatment in the form of adjustments to work assignments, harassment in the form of verbal and physical abuse and intimidation, and ultimately termination. These claims fail for several reasons.

First, many of the instances of discrimination or harassment Kline complains of simply do not rise to the level of actionable employment actions. To be "adverse" an employment action must "significantly alter[] the terms and conditions of the employee's job." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). It must be "materially adverse, not merely an inconvenience or a change in job responsibilities." *Id.*; *Garcia v. City of Chi.*, No. 10 C 3277, 2012 WL 12895304, at *14

(N.D. Ill. Nov. 5, 2012) ("Harder work assignments, additional responsibilities, negative performance evaluations, unfair reprimands, and refusals to grant a preferred vacation schedule, without more, ordinarily do not constitute adverse employment actions."). Critically, "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). Similarly, "[g]eneral hostility and comments do not qualify as actionable adverse employment actions unless the hostility was severe and pervasive." *Lichauco v. Nielsen*, No. 16 C 4624, 2018 WL 1064992, at *8 (N.D. Ill. Feb. 26, 2018) (quoting *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004)).

Except for his termination (which Kline does not claim to be racially motivated), Kline has not identified a single adverse action. Being assigned to more flights and gates might have changed or even added to Kline's responsibilities, but he does not contend that these tasks were outside the scope of his preexisting job duties or that he was not paid for the work performed. *See, e.g., E.E.O.C. v. RJB Props., Inc.*, 857 F. Supp. 2d 727, 750-51 (N.D. Ill. 2012) ("routine employment decisions about such matters as work allocation are not generally appropriate for judicial intervention"). Being yelled at and spoken to in demeaning and confrontational tones and intimidated by coworkers "lurking" in his area and lunging at him are certainly unwelcome behaviors for the workplace and possibly grounds for seeking assistance from his employer, but they do not rise above general hostility to actionable conduct. *Lichauco*, 2018 WL 1064992, at *8. Depending on the circumstances, even being pushed might not constitute an adverse employment action. *See, e.g., Bridgeforth v. Cook Cnty.*, No. 14 C 4443, 2015 WL 5951545, at *6 (N.D. Ill. Oct. 13, 2015) (finding that isolated push that did not result in serious injury was "insufficiently severe to establish a hostile work environment claim."). Here, the record shows at most that Loner lightly patted Kline's shoulder as he walked by. (DSOF, Ex. 26 at 2:09:00). Kline does not present

evidence of any injury suffered from this incident or that it was not an isolated occurrence. In sum, the Court concludes that no reasonable jury would find any of these actions were adverse.[7]

Second, even if the conduct was actionable and Kline had evidence that it all occurred, he has not demonstrated that the conduct occurred *because of his race*. To the contrary, Kline stated that he did not know how work responsibilities were distributed to colleagues. (DSOF ¶¶ 33-36). Similarly, Kline did not know if his supervisor harassed him because of race or age, why a coworker was prejudiced and did not like him, or why another coworker allegedly pushed him. (*Id.* ¶¶ 23-26, 38, 53-55). With respect to various decisionmakers in the disciplinary proceedings, the evidence is the same—Kline speculates that their decisions were based on his race and age but offers no basis for those beliefs. (*Id.* ¶¶ 56-59, 60-65). Conclusory statements about discriminatory animus are insufficient at the summary judgment stage, *Boss v. Castro*, 816 F.3d 910, 919 (7th Cir. 2016) ("conclusory assertions do not constitute evidence"), and Kline's admitted lack of knowledge about the motivations of his supervisors and coworkers do not support his claims.

In the same vein, Kline has not presented any evidence that another similarly situated employee outside of his protected class received better treatment. Kline testified that he does not know about the work assignments of other lead ramp servicemen, (DSOF ¶ 34). *See Williams v. Off. of Chief Judge of Cook Cnty. Ill.*, 839 F.3d 617, 626-27 (7th Cir. 2016) (holding that a plaintiff's failure to identify a similarly situated employee is fatal to their discrimination theory).

---

[7] Even construing Kline's *pro se* submissions liberally and drawing all reasonable inferences in his favor, the Court finds that Kline has failed to present evidence that the complained-of actions occurred as described. The various exhibits attached to his Declaration, including a witness statement from Loner stating that he did not touch Kline and missed a factfinding hearing because he was on vacation, scheduling calendars from January 2013, a pay advice for his final vacation payout, miscellaneous employee certificates and letters, and a United publication, do not prove his contentions. And this Court's review of the January 12, 2013 video footage of the alleged assault is consistent with what the decisionmakers found—Loner did nothing more than pat Kline on the shoulder.

Assuming Kline could meet his *prima facie* burden, United has presented sufficient evidence of a nondiscriminatory motive, which Kline has not shown is pretextual. *See McDonnell Douglas*, 411 U.S. at 802. Specifically, United cited evidence showing that work assignments are based on factors such as availability or status of a plane, and Kline has not contested these legitimate, discriminatory reasons with any evidence to the contrary.

Finally, to the extent that Kline asserts race discrimination claims in connection with his termination or being denied a buyout or early retirement package, those claims are barred because a plaintiff generally cannot bring claims in a lawsuit that were not included in a charge of discrimination, and he has not argued that any such claims are like or reasonably related to the allegations of the charges and grow out of such allegations. *See Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

The bottom line is that Kline has not presented enough evidence to allow a reasonable jury to find in his favor on his Title VII race discrimination claim in Count I (or under the IHRA in Count V). Accordingly, summary judgment is granted in favor of United on all race discrimination claims.

## III.  <u>Age Discrimination Claims</u>

The ADEA prohibits age-based discrimination against employees over the age of 40. *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018). Relevant here, the ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). "The ADEA outlaws discrimination in the workplace on the basis of age . . . , not changes in duties or working conditions that cause no materially significant disadvantage to an older employee." *Spring*

18

*v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 885 (7th Cir. 1989) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985)). The ADEA is not intended to "prevent employers from changing the job responsibilities of their [older] employees[,]" or "give [older] employees the right to walk out and sue their employer because they dislike their changed job responsibilities." *Spring*, 865 F.2d at 885 (quoting *Frazer v. KFC Nat'l Mgmt. Co.*, 491 F. Supp. 1099, 1105 (M.D. Ga. 1980)).

Like Title VII discrimination claims, both the *McDonnell Douglas* burden-shifting test and *Ortiz* apply in age discrimination cases. *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019). Unlike Title VII claims, however, to prevail under the ADEA, a plaintiff must show that the challenged adverse employment action would not have occurred *but for* his age. *Wrolstad*, 911 F.3d at 454 (7th Cir. 2018). To make this showing, a plaintiff may present evidence that the action was taken because of age or by producing evidence that a similarly situated employee not in the protected class was treated more favorably. *Id.* Either way, "the basic question at the summary-judgment stage is whether the evidence as a whole would allow a reasonable jury to find that the plaintiff suffered an adverse job action because of his age." *Id.*

Kline asserts age discrimination claims in Counts II and III of the Amended Complaint. Both claims arise under the ADEA and involve the same allegations but Count III alleges that United's conduct was willful. Specifically, Kline alleges that United violated the ADEA by failing and refusing to properly investigate his complaints, unfairly disciplining him but not Loner for allegedly fabricating the January 2013 physical assault, and ultimately terminating his employment on the same basis.

As discussed in Section I above, any age discrimination claims arising from the First Charge are time-barred, and Kline's claims for age discrimination under the IHRA contained

within the Second Charge are barred under 775 ILCS 5/7A-102(D)(3). Furthermore, any age discrimination claims arising from the allegations about being denied a buy out or early retirement package are beyond the scope of the timely filed charges with the EEOC and IDHR. *See Cheek*, 31 F.3d at 500. Accordingly, the only age discrimination claims that survive are those brought under the ADEA arising from allegations contained within the Second and Third Charges. The Second Charges includes allegations about the same instances of harassment (verbal abuse, verbal and physical intimidation, and physical assault) and disparate treatment (gate assignments), as discussed in connection with his race discrimination claims. The Third Charge asserts that United discharged Kline because of his age.

Except for the additional requirement of but-for causation, the same analysis applies to claims brought under Title VII and the ADEA, so Kline's age discrimination claims fail to the extent that they are based on the same allegations as his race discrimination claims. As the Court already found, Kline has not presented sufficient evidence for a reasonable jury to conclude that the harassment and disparate treatment (a) even occurred; (b) was materially adverse; (c) was based on his membership in a protect class (race or age); (d) was worse than a similarly situated employee outside his class; or that United's reasons were pretextual. Although these deficiencies alone are enough to defeat the age discrimination claims, they also fail because Kline has not come forward with any evidence to show that the alleged harassment and disparate treatment would not have occurred but for his age. Rather, the evidence supports the opposite conclusion—that United terminated Kline because he had been dishonest with respect to the reported physical assault and had therefore violated the company's WTG. At no time has Kline pointed to any younger employee who had apparently fabricated a story about being physically assaulted by a coworker and was not terminated. Although Kline contends that Loner was the one being dishonest and therefore should

have suffered the same consequences, Kline has not produced any evidence to support that theory. In fact, as discussed above, the video footage supports the contrary conclusion, as many fact finders have found in the disciplinary and administrative proceedings that preceded this action.

To the extent Kline points to other employees who were offered buyout or early retirement in lieu of termination for misconduct, (*see* Am. Compl. ¶¶ 20, 22-23), United has presented uncontroverted evidence that those employees were Kline's age or older or not eligible for such benefits, (DSOF ¶¶ 67-77). In any event, Kline's charges did not include anything about buyout or early retirement benefits, so those allegations cannot support his claims here.[8]

As with the race discrimination claims, even if Kline had established a prima facie case for age discrimination, the claims still fail because United has provided a legitimate, nondiscriminatory reason for termination, and Kline has not shown that it was pretextual. Kline reported that a coworker assaulted him. United investigated and concluded that Kline fabricated the story and was dishonest about it during the investigation. As a result, United terminated Kline for violating the company's internal guidelines, which require honesty. Dishonesty in violation of company guidelines that has been verified by video footage is a legitimate, nondiscriminatory basis for termination. *See, e.g., Wagner v. Caterpillar Inc.*, No. 95 C 5488, 1997 WL 45318, at *11 (N.D. Ill. Jan. 30, 1997) (granting summary judgment to employer where employee's reported back injury was shown to be false through video surveillance footage), *aff'd*, 129 F.3d 120 (7th Cir. 1997). Moreover, Kline has not offered any evidence to show that United's basis for terminating his employment was pretextual. To the contrary, Kline essentially admitted that he did not know whether the investigator or hearing officers did not honestly believe the reasons they

---

[8] United also provided evidence that Kline had previously been offered a buyout but did not take it and was not eligible for early retirement at the time of his termination because he had not reached the minimum age. Kline did not dispute these facts.

gave for his termination. (DSOF ¶¶ 52, 59, 65). The pretextual reasons supplied by Kline are equally unavailing. There is no dispute that Kline was governed by United's employee WTG, Kline provided no evidence that he was replaced by a younger employee, and Kline's contentions about supervisors bullying his colleague into changing her story about the assault are purely speculative because he was not present during any of the relevant conversations. (*Id.* ¶¶ 14-15, 66, 45).

Likewise, Kline's claim in Count III that United willfully violated the ADEA also fails. To establish willfulness, Kline must show that United either knew or recklessly disregarded the matter of whether its conduct (i.e., Kline's termination) violated the ADEA. *Chiaramonte v. Fashion Bed Grp., Inc., a Div. of Leggett & Platt, Inc.*, 129 F.3d 391, 402 (7th Cir. 1997) (citing *Trans World Airlines v. Thurston*, 469 U.S. 111, 128 (1985)), *overruled on other grounds by Ortiz*, 834 F.3d 760. As discussed above, Kline has not pointed to any evidence from which a jury could reasonably find that United Terminated him because of his age. It follows that Kline did not provide evidence that United either knowingly or recklessly violated the ADEA.

In sum, United is entitled to summary judgment on Kline's claims for age discrimination (Counts II and III).

## IV.   **Retaliation Claims**

Both Title VII and the IHRA make it unlawful for an employee to retaliate against an employee for filing a charge of discrimination or otherwise opposing unlawful discrimination. 42 U.S.C. 2000e-3(a); 775 ILCS 5/6-101. Because "the analysis for a retaliation claim under Title VII tracks the analyses for retaliation claims under . . . the IHRA, [the Court] need not separately discuss those statutes." *Miller v. Chicago Transit Auth.,* 20 F.4th 1148, 1155 n.2 (7th Cir. 2021) (citing *Volling*, 840 F.3d 378, 382-83 (7th Cir. 2016)). To establish a prima facie case for

retaliation, "a plaintiff must show that a reasonable jury could find that (1) he engaged in statutorily protected activity; (2) his employer took a materially adverse action against him; and (3) the adverse action was caused by the protected activity." *Miller*, 20 F.4th at 1155 (citing *Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 559-60 (7th Cir. 2019)). For the third prong of causation, an employee must show that the employer would not have taken the adverse action but for the protected activity. *Vavra v. Honeywell Int'l Inc.*, No. 21 C 6847, 2023 WL 5348764, at *10 (N.D. Ill. Aug. 21, 2023). In making this showing, an employee may refer to direct evidence or circumstantial evidence such as "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Adebiyi v. S. Suburban Coll.*, 98 F.4th 886, 892 (7th Cir. 2024) (quoting *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019)).

In Counts IV and VI of the Amended Complaint, Kline asserts retaliation claims under Title VII and the IHRA, respectively, based on the same alleged harassment, disparate treatment, and termination following general complaints and charges he filed for perceived discriminatory conduct.[9] To the extent that Kline's retaliation claims rely on the same allegations of verbal and physical intimidation and abuse and termination of his employment, they fail for many of the same reasons already discussed.

Although filing complaints and charges in this case may constitute protected activity, Kline is a member of protected classes (age and race), and termination of employment is surely an adverse employment action, most of the complained of actions were not materially adverse. More

---

[9] To the extent that Kline's claims are based on the general complaints about allegedly being forced to work on a broken jet bridge and being left injured and unattended after being hit by a car driven by a coworker, since none of these allegations were included in the EEOC or IDHR charges, they are barred. *See Cheek*, 31 F.3d at 500.

importantly, Kline has not provided evidence of a causal link between his termination and his race or age. There is no direct evidence of but-for causation such as admissions of retaliatory animus by the decisionmakers. Kline also has not offered sufficient circumstantial evidence of causation to raise a triable issue of fact. Kline claims that the complained of conduct began in August 2012 and continued through his termination in May 2013, and internal complaints and charges of discrimination were filed in essentially the same timeframe. "Evidence of temporal proximity, however, standing on its own, is insufficient to establish a causal connection for a claim of retaliation." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008). Besides the timing and Kline's conclusory allegations about retaliatory motives, there is no evidence in the record from which a reasonable jury could rule in Kline's favor. Beyond that, United has firmly established a legitimate, nonretaliatory reason for Kline's termination—namely, his fabrication of the physical assault—and Kline has not come forward with proof that United's reason is pretextual. For these reasons, United is also entitled to summary judgment on Kline's retaliation claims.[10]

## CONCLUSION

For the reasons stated above, Defendant United Airlines, Inc.'s motion for summary judgment is granted. Judgment is entered in favor of Defendant.

**DATED**: July 31, 2024

**ENTERED**:

LaShonda A. Hunt
United States District Judge

---

[10] Because United is entitled to summary judgment on other grounds, the Court declines to address the issues of preclusion under the Railway Labor Act, (Mem. at 5, 8-9, Dkt. 164), and waiver of claims, (Reply at 1, Dkt. 176).